IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NANO MALDONADO,<br><br>         Plaintiff,<br><br>    v.<br><br>WILL KEMPTON, in his capacity as Director of the California Department of Transportation,<br><br>         Defendant.<br>_____ / | No. C 02-03167 CRB<br><br>**MEMORANDUM AND ORDER RE: MOTIONS FOR SUMMARY JUDGMENT** |

    In this section 1983 action plaintiff alleges that California's Outdoor Advertising Act ("the Act" or "COAA") violates the First Amendment on its face. Now pending before the Court are the parties' cross-motions for summary judgment. Having reviewed the memoranda submitted by the parties, and having had the benefit of oral argument, the Court DENIES defendant's motion for summary judgment to the extent defendant moves for summary judgment on plaintiff's facial challenge. The Court GRANTS plaintiff's motion for summary judgment to the extent plaintiff challenges the constitutionality of the Act on the ground that it impermissibly favors commercial over non-commercial speech in violation of the First Amendment.

//

//

**BACKGROUND**

**I.   Undisputed Facts**

This case arises from a long-running dispute between plaintiff and the California Department of Transportation ("Caltrans") regarding the use of plaintiff's billboard. Plaintiff owns a commercial building located at 3600 Rolison Road adjacent to the southbound lanes of Highway 101 in Redwood City. In the mid-1950's a double-sided billboard was mounted on the roof of plaintiff's building.

COAA regulates billboards that are visible from and are placed near interstate and primary highways in California. See Cal. Bus. & Prof. Code § 5271. COAA section 5200 et seq., prohibits all billboard advertising along a "landscaped freeway" unless the billboards advertise goods or services available at the property on which the billboard is placed ("on-premises" advertising). Caltrans is responsible for enforcing COAA. In October 1993, Caltrans cited plaintiff for violating COAA. Plaintiff was cited again in 1996. Plaintiff subsequently sought review by the California Outdoor Advertising Review Board. Plaintiff argued that his billboards (for Stanford Shopping Center, a Holiday Inn, and Skyway Cellular, among other businesses) were lawful on-premises advertising because the businesses advertised also leased space on the premises. The Board disagreed. Plaintiff still did not remove the offending advertisements and Caltrans filed suit in state court to abate a public nuisance, namely, the advertisements. Following a trial, the Superior Court entered an injunction enjoining plaintiff from displaying any advertising on his billboard without permission from Caltrans and generally enjoined plaintiff from displaying any on-premises advertising unless it was for business conducted on the premises.

Plaintiff subsequently placed a sign on his billboard reading "AVAILABLE FOR ON SITE USE 650-366-2979." The trial court found plaintiff in contempt. Plaintiff did not give up. Shortly thereafter he put up a sign saying "IN GOD WE TRUST" "WE PRAY FOR WORLD PEACE" "HELP STOP TERRORISM" and listing the phone numbers of the FBI and Red Cross among others. He also included "AVAILABLE FOR ON SITE USE 650-366-2979." The other side of the billboard advertised Habitat for Humanity. The State again

instituted contempt proceedings. In February 2003, while this action was pending, the state court found that the Habitat for Humanity billboard and the "AVAILABLE FOR ON SITE USE" signs violated the permanent injunction and ordered plaintiff to pay a fine and the State's fees and costs. The court also determined that the "In God We Trust" display did not violate the injunction or the previous contempt orders.

## II.     Procedural History

In his initial complaint plaintiff challenged the constitutionality of several portions of the Act on its face and as applied to him. This Court dismissed the complaint on grounds of standing, claim preclusion, and the Rooker-Feldman doctrine. Plaintiff appealed some of the Court's rulings and the Ninth Circuit reversed and remanded the action to this Court for decision on the merits.

Plaintiff subsequently filed a First Amended Complaint. Plaintiff continues to challenge the constitutionality of COAA on its face and as applied. Among other things, plaintiff alleges that the Act chills publication of non-commercial speech and that past enforcement of the injunction against plaintiff has caused him to refrain from using his billboard to publish paid political advertisements and free religious messages.

For example, he alleges that during the 2004 election season he was interested in selling billboard space to political candidates looking to publish political campaign messages. He was approached by a candidate for the California Assembly. The candidate's campaign offered to pay for use of plaintiff's billboard for political campaign messages on the condition that plaintiff guarantee that such advertising is legal. Plaintiff asked defendant to provide a written statement declaring that political advertising was permissible on the billboard. Defendant declined, stating that he could not give an opinion without first reviewing the copy to be published on the billboard. As a result, plaintiff refrained from publishing the campaign messages.

Plaintiff also alleges that the Act chilled and continues to chill him from displaying free religious messages during the holidays. Plaintiff was approached by a local theater group and asked to display messages such as "A WORLD AT PRAYER IS A WORLD AT

1 PEACE," and "GOT FAITH?" Plaintiff wanted to include the names and addresses of local
2 churches with the above display. He refrained from publishing this display for fear of
3 violating the Act.
4       The Court previously ruled that the Act's distinction between "off-premises" and "on-
5 premises" advertising is legal. The sole issue now before the Court is whether COAA
6 prohibits non-commercial speech where it permits commercial speech, and if so, whether this
7 prohibition renders the Act unconstitutional.

## STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is "material" only if it could affect the outcome of the suit under governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). A principal purpose of the summary judgment procedure "is to isolate and dispose of factually unsupported claims." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Ind. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex, 477 U.S. 323. If the moving party satisfies its initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. 574, 586; see also Anderson, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient"). Rather, the nonmoving party must go "beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts

4

showing there is a genuine issue for trial." Celotex, 477 U.S. at 324 (quoting Fed.R.Civ.P. 56(e)) (internal quotations marks omitted).

## DISCUSSION

The question before the Court is whether COAA favors commercial over non-commercial speech in violation of the First Amendment.

### I. Billboard Statutes Must Allow Non-Commercial Signs if They Allow On-Premises Commercial Signs

The leading case regarding First Amendment challenges to billboard ordinances is Metromedia, Inc. v. City of San Diego, 453 U.S. 490 (1981). Under Metromedia, "an ordinance is invalid if it imposes greater restrictions on noncommercial than on commercial billboards or regulates noncommercial billboards based on their content." National Advertising Co. v. City of Orange, 861 F.2d 246, 248 (9th Cir. 1988) (citing Metromedia, 453 U.S. at 513, 516). The San Diego ordinance at issue in Metromedia had an exception to its general ban on billboard advertising for on-premises commercial advertising; there was no similar exception for non-commercial advertising. The Supreme Court held the ordinance unconstitutional:

> [t]he fact that the city may value commercial messages relating to onsite goods and services more than it values commercial communications relating to offsite goods and services does not justify prohibiting an occupant from displaying its own ideas or those of others. . . . [i]nsofar as the city tolerates billboards at all, it cannot choose to limit their content to commercial messages; the city may not conclude that the communication of commercial information concerning goods and services connected with a particular site is of greater value than the communication of non-commercial messages.

Metromedia, 453 U.S. at 513; see also Clear Channel Outdoor Inc. v. City of Los Angeles, 340 F.3d 810, 814-15 (9th Cir. 2003) (following Metromedia); Ackerley Comm. of Northwest v. Krochalis, 108 F.3d 1095, 1099 (9th Cir. 1997) (same); Outdoor Sys., Inc. v. City of Mesa, 997 F.2d 604, 610 (9th Cir. 1993) (same); National Advertising Co., 861 F.2d at 248 (same). The law is settled that billboard ordinances may not favor commercial speech by permitting on-premises commercial speech while prohibiting all non-commercial speech. Therefore, the primary issue here is whether COAA prohibits non-commercial speech where it permits on-premises commercial speech.

5

## II. COAA Prohibits Non-Commercial Speech

Defendant contends that the Act is constitutional because it *does not* prohibit a property owner from placing a non-commercial billboard along a landscaped freeway. To support this interpretation of the Act defendant relies on the declaration of the Senior Outdoor Advertising Inspector at the California Department of Transportation. See Decl. of Sergay Ivazian. Mr. Ivazian asserts that the Department has always interpreted non-commercial displays as outside the scope and intent of the Act. Ivazian Decl. at ¶¶ 1-12. The State's interpretation of the Act is belied by (1) the Ninth Circuit's ruling in this case, (2) the language and structure of COAA, and (3) the State's inconsistent interpretations of COAA.

### A. The Ninth Circuit Has Held That COAA Prohibits All Non-Commercial Speech

The Ninth Circuit squarely rejected defendant's unsupported interpretation of COAA:

> Counsel for Caltrans asserted at oral argument that COAA does not apply to non-commercial advertisements, although he could point to nothing in the statute in support of that assertion. . . . [N]othing in the statute creates an exception for non-commercial advertisements and no controlling caselaw has construed the Act in the manner Caltrans suggests.

Maldonado v. Harris, 370 F.3d 945, 953 n.5 (9th Cir. 2004). Defendant merely dismisses the Ninth Circuit's statement as dicta. The Court disagrees. The statement was critical to the Ninth Circuit's conclusion that plaintiff had standing. If COAA does not apply to non-commercial speech, plaintiff's argument that his then-current conduct violated COAA would have failed and he would not have had standing. Thus, the Ninth Circuit's statement was necessary to its holding and therefore the law of the case, and indeed, of the circuit. See Miranda B. v. Kitzhaber, 328 F.3d 1181, 1186 (9th Cir. 2003) ("[W]here a panel confronts an issue germane to the eventual resolution of the case, and resolves it after reasoned consideration in a published opinion, that ruling becomes the law of the circuit, regardless of whether doing so is necessary in some strict logical sense") (internal quotation marks and citation omitted).

//

### B. The Language and Structure of the Statute

Even assuming the Ninth Circuit had not yet ruled on the issue, the language and structure of the statute demonstrate that COAA applies to non-commercial speech. The Act prohibits all billboard "advertising displays" adjacent to landscaped freeways. See Cal. Bus. & Prof. Code § 5440 ("Except as otherwise provided in this article, no *advertising display* may be placed or maintained on property adjacent to a section of a freeway that has been landscaped if the *advertising display* is designed to be viewed primarily by persons traveling on the main-traveled way of the landscaped freeway") (emphasis added).

"'Advertising display' refers to advertising structures and to signs." Cal. Bus. & Prof. Code §5202. "Advertising structure" is defined as "a structure of any kind or character erected, used or maintained for outdoor advertising purposes, upon which any poster, bill, printing, painting or other advertisement of any kind whatsoever may be placed, including statuary, for advertising purposes." Cal. Bus. & Prof. Code § 5203. The Act then identifies specific examples of what is *not* an "advertising structure," but does not further define "advertising structure." Cal. Bus. & Prof. Code § 5203 ("An advertising structure does not include: (a) Official notices issued by any court or public body or officer; (b) Notices posted by any public officer in performance of a public duty or by any person in giving legal notice; (c) Directional, warning or information structures required by or authorized by law or by federal, state or county authority; (d) A structure erected near a city or county boundary, which contains the name of such city or county and the names of, or any other information regarding, civic, fraternal or religious organizations located therein").

The prohibition of all "advertising displays" does have an exception for "on-premises" advertising. See Cal. Bus. & Prof. Code § 5442 ("Section 5440 does not apply to any advertising structure or sign if the advertising display is used exclusively for any of the following purposes: (a) [t]o advertise the sale or lease of the property upon which the advertising display is placed; (b) [t]o designate the name of the owner or occupant of the premises upon which the advertising display is placed, or to identify the premises; (c) [t]o

advertise goods manufactured or produced, or services rendered, on the property upon which the advertising display is placed").

The paid political advertisements plaintiff alleges he was "chilled" from placing on his billboard fall within the definition of "advertising displays" prohibited by the Act and fall outside the exception for on-premises advertising. See Cal. Bus. & Prof. Code § 5442. The Supreme Court has made it clear that paid political advertisements do not lose their full First Amendment protection simply because they were paid for. See N.Y. Times Co. v. Sullivan, 376 U.S. 254, 266 (1964) ("That the Times was paid for publishing the advertisement is as immaterial in this connection as is the fact that newspapers and books are sold"). Therefore, the plain language of the Act prohibits non-commercial speech while allowing on-premises commercial advertisements.

The conclusion that COAA impermissibly prohibits non-commercial speech is supported by a provision in COAA exempting temporary political signs. See Cal. Bus. & Prof. Code §5405.3. ("A temporary political sign is a sign which: (a) Encourages a particular vote in a scheduled election; (b) Is placed not sooner than 90 days prior to the scheduled election and is removed within 10 days after that election; (c) Is no larger than 32 square feet; and (d) Has had a statement of responsibility filed with the State Department of Transportation certifying a person who will be responsible for removing the sign and who will reimburse the department for any cost to remove it"). If, as defendant claims, COAA does not apply to non-commercial speech, there would be no need for an exception from the billboard ban for temporary political signs–all political signs are non-commercial. Furthermore, the exemption was added to the Act in 1979 to clear up confusion as to whether the Act covered temporary political signs. 79 Ops. Cal. Atty. Gen. 117 (1996) (citing Stats. 1979, ch. 1054, § 2 (Cal. 1979)). By adding the explicit exemption, the legislature made it clear that COAA does apply to political signs.

The Act's exemptions for directional signs, official notices, and city or county signs similarly demonstrate that the Act prohibits non-commercial signs. See Cal. Bus. & Prof. Code §5442.5 ("Section 5440.1 does not apply to any advertising display . . . used

8

exclusively for any of the following purposes: (a) Directional and official signs and notices, including, but not be limited to, signs and notices pertaining to natural wonders or scenic and historical attractions that are otherwise required or authorized by law and conform to regulations adopted by the department. Again, these exemptions would be unnecessary, if, as defendant claims, the Act does not apply to non-commercial speech. Directional signs–by any stretch of the imagination–cannot be considered commercial speech.

Moreover, the majority of billboard ordinances that courts have held to be neutral towards non-commercial speech have contained what is referred to as a "substitution clause." A substitution clause is an express statement that exempts non-commercial speech from a billboard regulation or allows for non-commercial messages to be substituted for permitted commercial messages. See Clear Channel, 340 F.3d at 814-15 (holding ordinances constitutional because they include a "substitution clause" that "guarantees that political or other noncommercial messages" are not restricted to on-premises signs); Valley Outdoor, Inc. v. County of Riverside, 337 F.3d 1111, 1113 (9th Cir. 2003) (discussing amendment to Riverside ordinance that allows any non-commercial message to be substituted for a commercial message on any otherwise lawful sign); Outdoor Systems, 997 F.2d at 612 (discussing ordinances that were content neutral with respect to non-commercial speech because the ordinances contained a substitution clause that permitted any otherwise properly erected sign to contain non-commercial messages in lieu of any other message). COAA's lack of a similar exemption for non-commercial speech is additional evidence that the Act prohibits non-commercial speech where it permits commercial speech.

### C.    The State's Positions

Defendant's assertion that the State has never treated COAA as applying to non-commercial speech is contradicted by the California Fair Political Practices Commission's ("FPPC") interpretation of the Act. Plaintiff's counsel contacted the FPPC to obtain an opinion regarding campaign finance law as applied to proposed political advertisements on plaintiff's billboard. See Decl. Attorney Zell Re Motions For Summary Judgment, Ex. E. The FPPC responded with an informal assistance letter which states, "it appears that the

9

sweep of the injunction extends to *all* 'off-premises' advertisements, including those you characterize as 'noncommercial' political advertising." Id. (original emphasis). Thus, at least one state agency reads the Act as does plaintiff, the Ninth Circuit, and this Court.

      Defendant himself filed a contempt motion in state court seeking to force plaintiff to remove his non-commercial "In God We Trust/Help Stop Terrorism" sign as violative of the state court injunction. See Exh. C to Plaintiff's Request for Judicial Notice. This sign unquestionably contained non-commercial speech. Defendant claims that Caltrans only sought the contempt order for the portion of the billboard display that listed the phone numbers of the off-premises organizations the Red Cross, FBI, and the San Mateo Sherriff, and not for the billboard's "In God We Trust/Help Stop Terrorism" message. See Decl. of Daniel Weingarten in Support of Defendant's Reply, Ex. A. Whether the contempt motion targeted non-commercial speech is in dispute; nonetheless, the confusion surrounding the issue bolsters plaintiff's claim that he feels "chilled" from displaying non-commercial messages on his billboard.

      The law cited by defendant does not support his interpretation of the Act. There is no California caselaw that specifically addresses whether COAA applies to non-commercial advertisements. The 1996 opinion of the California Attorney General was issued in response to the following question submitted by a member of the California State Assembly: "Does the Outdoor Advertising Act (Bus. & Prof. Code, §§ 5200-5486) apply to the posting of a sign on private property adjacent to a highway that expresses the property owner's opinion concerning a state or federal public official?" 79 Ops. Cal. Atty. Gen. 117 at 1 (1996). The Attorney General concluded that the Act does not apply; however, the Ninth Circuit determined that the opinion does not fully address whether the Act applies to non-commercial speech, and, in any event, is non-binding:

> California's Attorney General has stated that the Act "does not apply to the posting of a sign on private property adjacent to a highway that expresses the property owner's opinion concerning a state or federal public official." While the Attorney General's opinion also expresses doubt that the Act applies to noncommercial messages generally, the actual question it dealt with was much narrower. Moreover, while the Attorney General's opinions are given substantial weight by the California courts, they are not considered controlling.

10

Maldonado, 370 F.3d at 953 n.5.  In any event, the Attorney General's reasoning is circular: "if we construed the Act to cover the expression of a political belief, it would raise serious doubts as to whether its provisions were constitutional under the First Amendment . . ." Id. at 8.  In other words, the Attorney General reasoned that the Act did not apply to non-commercial speech because if it did apply the Act would be unconstitutional.  If the Court were to adopt such reasoning no statute would ever be unconstitutional.

Defendant's reliance on an outlying Eleventh Circuit case is equally unpersuasive. Southlake Property Assoc., Ltd. v. City of Morrow, 112 F.3d 1114 (11th Cir. 1997).  In Southlake Property, the plaintiff asserted that a city ordinance prohibiting off-premises billboards was unconstitutional under Metromedia because it lacked an exception for non-commercial speech. Id. at 1117.  The court held that the ordinance was constitutional because the city had never applied it to prohibit non-commercial speech. Id.  The Eleventh Circuit also held that all non-commercial speech should be characterized as on-premises, because "an idea, unlike a product, may be viewed as located wherever the idea is expressed." Southlake Property, 112 F.3d at 1118.  Under this view all non-commercial speech is considered "on-premises."

The theory that all non-commercial speech should be considered "on-premises" has no support in the majority of circuits, including the Ninth Circuit.  See e.g., Clear Channel Outdoor Inc., 340 F.3d at 815 ("[t]he amendment creates an exemption for *noncommercial off-site* signs") (emphasis added); Ackerley Communications Inc. v. City of Cambridge, 88 F.3d 33, 37 (1st Cir. 1996) ("[t]he only signs containing noncommercial messages that are [on-premises] are those relating to the premises on which they stand, which inevitably will mean signs identifying nonprofit institutions").  The Court declines to adopt that theory here.

### D.     Summary

As COAA applies to non-commercial speech as a matter of law, the Act impermissibly favors commercial over non-commercial speech by prohibiting non-commercial billboards where it permits on-premises commercial billboards.  As defendant

11

does not contend that it has a compelling state interest in prohibiting such non-commercial speech, the Act violates the First Amendment. Metromedia, 453 U.S. at 513.

## III. Remedy

Having concluded that COAA is unconstitutional because it prohibits non-commercial speech where it permits commercial speech, the Court must now determine whether to invalidate COAA partially or in its entirety. The parties' positions are unsurprising: plaintiff argues that the Court should enjoin enforcement of COAA in its entirety, while defendant contends that the Court should enjoin enforcement of COAA merely to the extent that it impermissibly burdens non-commercial speech. The Court will invalidate only the unconstitutional portions of COAA, leaving the rest of the Act intact.

In Ayotte v. Planned Parenthood, the Supreme Court reaffirmed the general rule that "when confronting a constitutional flaw in a statute, [courts] try to limit the solution to the problem." 126 S.Ct. 961, 967 (2006); accord Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 504 (1985) (invalidating only the unconstitutional provisions of a statute); United States v. Raines, 362 U.S. 17, 20-22 (1960) (same); National Advertising, 861 F.2d at 249 (same).

Ayotte articulated three interrelated principles to guide the crafting of a remedy. First, a court should try to invalidate no more of a statute than necessary. Ayotte, 126 S.Ct. at 967. "Accordingly, the 'normal rule' is that 'partial, rather than facial, invalidation is the required course,' such that a 'statute may . . . be declared invalid to the extent that it reaches too far, but otherwise left intact.'" Id. at 968 (citation omitted).

"Second, mindful that our constitutional mandate and institutional competence are limited, [courts] restrain ourselves from 'rewrit[ing] state law to conform it to constitutional requirements' even as [courts] strive to salvage it." Id. (quoting Virginia v. Am. Booksellers Ass'n. Inc., 484 U.S. 383, 397 (1988)). A court's "ability to devise a judicial remedy that does not entail quintessentially legislative work often depends on how clearly [the appellate courts] have articulated the background constitutional rules at issue and how easily [the court] can articulate the remedy." Id.; see also United States v. Grace, 461 U.S. 171, 180-183 (1983) (invoking clearly established First Amendment precedent distinguishing between

12

1  public sidewalks and government buildings as basis for partial invalidation of statute banning
2  expressive displays).
3     Third, when constructing a remedy a court must always consider legislative intent,
4  "for a court cannot use its remedial powers to circumvent the intent of the legislature."
5  Ayotte, 126 S.Ct. at 968 (internal quotation marks and citation omitted).  "After finding an
6  application or portion of a statute unconstitutional, [a court] must next ask: Would the
7  legislature have preferred what is left of its statute to no statute at all?"  Id.
8     Ayotte considered the appropriate remedy to a constitutional flaw in New
9  Hampshire's Parental Notification Prior to Abortion Act ("PNPAA").  N.H. Rev.Stat Ann.
10 §§132:24-132:28.  The district court declared PNPAA facially unconstitutional because it
11 lacked a health exception, invalidated PNPAA in its entirety, and permanently enjoined its
12 enforcement  Id. at 965.  The First Circuit affirmed.  Id.  The Supreme Court concluded that
13 an injunction prohibiting only PNPAA's unconstitutional application was appropriate so long
14 as the lower courts determine that such relief would be consistent with legislative intent.  Id.
15 at 969.
16    The Ayotte principles mandate partial invalidation of COAA.  First, courts must be
17 mindful to invalidate no more of a statute than necessary.  See Planned Parenthood
18 Federation of America, Inc. v. Gonzales, 435 F.3d 1163, 1184 (9th Cir. 2006) (citing Ayotte,
19 126 S.Ct. at 967).
20    Second, the background constitutional rules at issue are clearly established: the United
21 States Supreme Court and lower federal courts have consistently held that a billboard law
22 may not prohibit non-commercial speech where it permits commercial speech.  Indeed, in
23 light of this clearly established law, nearly all billboard ordinances explicitly permit non-
24 commercial speech where they permit commercial speech.  See e.g., Clear Channel Outdoor
25 Inc., 340 F.3d at 814; Outdoor Sys., Inc., 997 F.2d at 608-609; see also  Nat'l Adver. Co. v.
26 Town of Babylon, 900 F.2d 551, 556-57 (2d Cir.1990) ("After Metromedia struck down the
27 San Diego ordinance as granting more protection to commercial than noncommercial speech,
28 municipalities responded by adding provisions to their sign ordinances to overcome this

13

defect by permitting noncommercial messages wherever commercial messages are allowed"). It is thus a "relatively simple matter" to construct a narrow remedy that enjoins enforcement of COAA only as far as it impermissibly prohibits non-commercial speech. Ayotte, 126 S.Ct. at 968 (quoting United States v. Treasury Employees, 513 U.S. 454, 459 n.26 (1995)); see also National Advertising Co., 861 F.2d at 250 (invalidating billboard ordinance only as to signs bearing non-commercial messages because the ordinance can function effectively even if so limited).

Third, partial invalidation of COAA is consistent with legislative intent. Defendant argues that it is not the State's intent to prohibit non-commercial speech through COAA, and thus the State prefers partial invalidation of COAA. Moreover, COAA's stated legislative intent is to maintain aesthetics and safety, not to prohibit non-commercial messages. See Cal. Bus. & Prof Code § 5226. That intent is not violated by permitting non-commercial signs where the Act already permits commercial signs. Finally, there is nothing in the statute or legislative history that suggests the legislature explicitly decided to prohibit non-commercial speech where the law permits commercial speech. C.f. Planned Parenthood v. Gonzales, 435 F.3d at 1186-88 (invalidating entire "partial birth abortion" statute under Ayotte because the legislative history demonstrated that the statute's constitutional flaw–omission of an exception for the health of the woman–was a critical component of the legislation).

Accordingly, the Court will not invalidate COAA in its entirety; instead, the Court will enjoin the State from enforcing COAA to prohibit non-commercial speech wherever the Act permits commercial speech.

## CONCLUSION

COAA violates the First Amendment because it favors commercial speech over non-commercial speech by prohibiting non-commercial speech where it permits commercial speech. Accordingly, plaintiff's motion for summary judgment on his facial challenge to the Act's ban on non-commercial speech is GRANTED and defendant's motion for summary

judgment on the same issue is DENIED.  The State is enjoined from enforcing COAA to prohibit non-commercial speech where the Act permits commercial speech.

As this Court's holding changes the landscape of this action, the parties shall appear for a Case Management Conference at 8:30 a.m. on Thursday, April 6, 2006 to discuss how to proceed.  Prior to the Conference the parties shall meet and confer and submit a joint case management conference statement.  The statement shall detail the claims remaining at issue in this lawsuit and how the parties propose to resolve those claims, including whether the State should re-file its motion for summary judgment.

The Court is also concerned that unless and until the State amends COAA to comply with the First Amendment, the Act will continue to have a chilling effect on the exercise of the constitutional right to free speech.  Those who read the statute may well believe that they are prohibited from putting up non-commercial signs in certain locations.  The parties' case management conference statement shall propose methods for addressing this concern; for example, requiring the State to notify all billboard owners of this Court's ruling.

**IT IS SO ORDERED.**

Dated: March 23, 2006

_____
CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE