**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NANO MALDONADO, | No. C 02-03167 CRB |
| Plaintiff, | **MEMORANDUM AND ORDER** |
| v. | |
| WILL KEMPTON, | |
| Defendant. | |

In this section 1983 action plaintiff alleges that California's Outdoor Advertising Act ("the Act" or "COAA") violates the First Amendment on its face and as applied to a billboard he owns adjacent to Highway 101 in Redwood City, California. The Court has already issued several rulings in this case. The Court rejected plaintiff's challenge to the Act's ban on off-premises commercial advertising. October 25, 2005 Order. The Court also ruled that the Act is unconstitutional to the extent it prohibits non-commercial billboard displays where it permits on-premises commercial advertising. The Court therefore enjoined the defendant from enforcing the Act to prohibit non-commercial speech where the Act permits commercial speech. <u>Maldonado v. Kempton</u>, 422 F.Supp.2d 1169 (N.D. Cal. 2006).

Now pending before the Court are the parties' cross-motions for summary judgment on the remaining claims. As the parties are familiar with the background facts, the Court will not repeat them here.

**DISCUSSION**

Although the Court has previously ruled that the State may prohibit off-premises commercial speech at the same time it permits on-premises commercial speech, plaintiff still challenges the Act's prohibition on off-premises commercial speech on a variety of grounds: (1) it is unconstitutional because it permits an off-premises commercial billboard to be declared a public nuisance; (2) it is unconstitutional because the distinction between commercial and non-commercial speech is inherently vague; (3) the prohibition violates due process; (4) the prohibition violates something plaintiff refers to as "the suppression doctrine;" and (5) it violates the Equal Protection Clause as applied to him because the State permits some off-premises commercial displays along landscaped freeways. Plaintiff also seeks to have the Court declare that certain proposed signs are non-commercial and therefore not subject to COAA's prohibition on off-premises commercial advertising, and that the freeway adjacent to his billboard does not satisfy regulations defining a "landscaped" freeway.

**I.  Standing**

Defendant maintains that plaintiff cannot prove that he has standing to challenge the Act's restrictions on commercial speech. To establish standing, plaintiff must prove: (1) that "there is actual or imminent injury, which is concrete and particularized, not hypothetical or conjectural," (2) that the injury is fairly traceable to the State's actions, and (3) "that it is likely, not merely speculative, that the injury will be redressed by a favorable decision." Valley Outdoor, Inc. v. City of Riverside, 446 F.3d 948, 953 (9th Cir. 2006). Defendant contends that plaintiff cannot satisfy the third element--redressability--because it is undisputed that Redwood City's sign ordinance applies to plaintiff's billboard and prohibits off-premises commercial advertising. See Declaration of Gerald Kelly ¶ 15, Exh. A, p. 10 (Redwood City ordinance § 3.114(a)). Moreover, to be entitled to a permit from CalTrans for off-premises commercial advertising, plaintiff would have to show written consent from Redwood City. Cal. Bus. & Prof. Code § 5354(a). Thus, argues defendant, even if the Court

2

were to enjoin the State from applying the off-site commercial advertising ban to plaintiff's billboard, plaintiff would still not be able to engage in off-site commercial advertising.

As support for his argument, defendant relies on a Seventh Circuit case, <u>Harp Advertising Ill. v. Village of Chicago Ridge</u>, 9 F.3d 1290, 1291-93 (7th Cir. 1993).  In <u>Harp</u>, the plaintiff advertising company sued the Village on the ground that a Village sign ordinance and a zoning ordinance violated the First Amendment.  The Seventh Circuit ruled that the plaintiff did not prove that it had standing because a different ordinance governing the size of billboards--and not challenged by the plaintiff--also prohibited the plaintiff's proposed billboard.  The plaintiff therefore lacked "standing to challenge either the sign code or the zoning code, because it could not put up its sign even if it achieved total victory in this litigation."  <u>Id.</u> at 1291 (citing <u>Renne v. Geary</u>, 111 S.Ct. 2331, 2337-38 (1991)).

> When the challenged statute is the only thing standing in the way of additional speech, the winner of the contest has a valuable prize, even if the government may enact a different statute that snatches away the victory. [The plaintiff] has no similar prospect of gain.  An injunction against the portions of the sign and zoning codes that it has challenged would not let it erect the proposed sign; the village could block the sign simply by enforcing another, valid, ordinance already on the books. [The plaintiff] has no more to gain from winning this suit than would a firm seeking to erect a sign in Alaska (where an ordinance similar to [defendant's] spelled the difference), or a lawyer living in Chicago Ridge and interested not in erecting signs, but in constitutional injury.

<u>Id.</u> at 1292.  Because winning the case would not redress the plaintiff's injury (being able to billboard advertise), the plaintiff had not satisfied the redressability element of standing.  <u>Id.</u>; <u>see also</u> <u>Get Outdoors II, Inc. v. San Diego</u>, 381 F.Supp.2d 1250, 1259-60 (S.D. Cal. 2005) (dismissing for lack of redressabilty); <u>Trinity Outdoor, L.L.C. v. Rockland, Maryland</u>, 2004 WL 78054 (D. Md. Jan. 15, 2004) (applying <u>Harp</u> and finding no standing because other non-challenged ordinances prohibited plaintiff's proposed advertising display).

The same reasoning appears to apply here.  Even if plaintiff convinces the Court to enjoin the State from enforcing COAA's prohibition on off-site commercial advertising against plaintiff, Redwood City "could block the sign simply by enforcing another, valid, ordinance already on the books," <u>id.</u> at 1292; namely, its ordinance prohibiting off-premises commercial displays.  Indeed, the undisputed evidence demonstrates that Redwood City has

3

already enforced its ordinance against plaintiff by allowing him to keep his billboard on the condition that he use it only for on-premises commercial advertising or non-commercial messages.

Plaintiff's assertion that the Ninth Circuit and this Court have already decided standing in his favor on all the claims in his lawsuit is wrong. No court has ruled on his standing to pursue the claims in his amended complaint; no court has ruled on his standing on a motion for summary judgment rather than a motion to dismiss; and, in any event, no court has addressed plaintiff's standing in light of the Redwood City ordinance.

Plaintiff's attempt to distinguish Harp is also unpersuasive. That one of the two-challenged ordinances in Harp was repealed was not material to the court's standing decision; the dispositive issue was that the plaintiff did not challenge a different ordinance which prohibited the sign the plaintiff wished to erect. The same is true here: plaintiff does not challenge the Redwood City ordinance which prohibits any off-site non-commercial advertising.

A different distinction, not mentioned by plaintiff in his papers, is nonetheless important. In Harp, the grounds the plaintiff gave for challenging the sign and zoning ordinances did not apply to the uncontested ordinance. Here, in contrast, arguably some of plaintiff's challenges apply with equal force to the Redwood City ordinance--after all, both laws prohibit off-premises commercial advertising. For example, plaintiff's claim that the distinction between commercial and non-commercial speech is inherently vague applies to COAA and the Redwood City ordinance. If plaintiff were to prevail on his claim in this lawsuit, he might then be entitled to similar relief against Redwood City.

In addition, in some instances plaintiff may be seeking relief that is not precluded by the Redwood City ordinance. For example, plaintiff challenges Business and Professions Code section 5461 and its concomitant procedures for declaring a billboard that does not comply with COAA a public nuisance. While plaintiff's complaint and pleadings are far from clear, it may be that the Court could give plaintiff some relief even if his commercial sign would nonetheless be barred by the Redwood City ordinance.

4

In any event, as the above discussion demonstrates, the Court must examine defendant's standing argument in the context of each of plaintiff's specific claims.

## II.     Plaintiff's Claims

### A. <u>Injunctions are unconstitutional</u>

Plaintiff argues that COAA is unconstitutional because it permits courts to enjoin commercial billboards that violate the Act. California Business and Professions Code section 5461 provides, in relevant part, that all advertising displays that violate COAA "may be removed by any public employee as further provided in this chapter." While his argument is somewhat difficult to follow, he appears to contend that any injunctions issued pursuant to section 5461, including the October 7, 1999 state court injunction issued against plaintiff, are unconstitutional because they allow activity to be enjoined as a nuisance and they allow persons, such as plaintiff, to be punished for contempt. In other words, he argues that it is unconstitutional to enjoin the publication of commercial speech, even if such speech violates an otherwise lawful regulation. He therefore seeks an injunction enjoining "enforcement of Business and Professions Code section 5461 and all state court injunctions based thereon including the state court injunction against Mr. Maldonado." Plaintiff's Motion for Summary Judgment at 9.

The Court will assume that plaintiff has standing to make this claim. The claim is, at bottom, an attack on the prohibition on off-site commercial billboards: if governmental entities cannot enjoin persons from violating such prohibitions, and cannot hold persons in contempt for violating the injunctions, the prohibition is meaningless. Thus, plaintiff's argument, if successful, would render the Redwood City ordinance unconstitutional as well.

Plaintiff's argument, however, is not successful. He relies solely on United States Supreme Court cases decided *before* <u>Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New York</u>, 447 U.S. 557 (1980) and <u>Metromedia, Inc. v. City of San Diego</u>, 453 U.S. 490 (1981). In <u>Central Hudson</u>, the Supreme Court approved restrictions on commercial speech, provided such restrictions meet the test set out in the opinion. 477 U.S. at 566; <u>see also</u> <u>In re Doser</u>, 412 F.3d 1056, 1063 (9th Cir. 2005) ("Commercial speech is afforded less

5

protection than other forms of protected expression"). The Ninth Circuit has interpreted Metromedia as standing for the proposition that a governmental entity can either ban all signs or ban all signs with the exception of on-premises signs to advance the government's interest in traffic safety and aesthetics. See Outdoor Sys. Inc. v. Mesa, 997 F.2d 604, 610-11 (9th Cir. 1993).

The Court understands that plaintiff disagrees with these cases and believes that if the Supreme Court were presented with the issue today it would rule differently. As this Court has previously noted, it is not for this Court "to overrule Supreme Court authority that is squarely on point." Ackerley Comm. of the Northwest Inc. v. Krochalis, 108 F.3d 1095, 1096 (9th Cir. 1997).

### B. Commercial v. non-commercial is inherently vague

Next, plaintiff contends that COAA must be invalidated in its entirety because the commercial versus non-commercial distinction is inherently vague. As the Court previously ruled that the State could not constitutionally prohibit non-commercial speech where it permits on-premises commercial speech, plaintiff's argument is that the State must permit all speech, commercial and non-commercial alike, or prohibit all speech, regardless of content. For the reasons stated in the previous section, the Court will assume that plaintiff has standing to make this claim.

As plaintiff acknowledges, his contention is foreclosed by binding Ninth Circuit precedent. See Plaintiff's Motion for Summary Judgment at 14. In Outdoor Systems, Inc., the court rejected the precise argument made by plaintiff here:

> Because our First Amendment jurisprudence recognizes a distinction between commercial and noncommercial speech, government officials have to place a particular message into one or the other category for purposes of regulation. The potential difficulty of that categorization in itself does not render the regulations unconstitutional. . . .
>
> We also disagree with the contention that the city officials' discretion is unfettered. On the contrary, the city officials can and must rely on judicial precedent to determine what is commercial speech. . . . [S]ufficient guidance in categorizing speech as commercial or noncommercial is provided by various decisions of the Supreme Court. If the Supreme Court's definitions of commercial and noncommercial speech do not

6

constitute "narrow, objective, and definite standards," it is hard to imagine what would.

997 F.2d at 613; see also Clear Channel Outdoor Inc. v. City of Los Angeles, 340 F.3d 810, 816 (9th Cir. 2003) (rejecting challenge to commercial/noncommercial and on-premises/off-premises distinction in ordinance on the ground that the distinctions "have been sufficiently explicated in case law").

### C. Substantive due process

Plaintiff also contends that the State's designation of the freeway adjacent to his billboard as "landscaped" violates substantive due process.

COAA defines a landscaped freeway as "a section or sections of a freeway that is now, or hereafter may be, improved by the planting at least on one side or on the median of the freeway right-of-way of lawns, trees, shrubs, flowers or other ornamental vegetation requiring reasonable maintenance." Cal. Bus. & Prof. Code § 5216(a). The California Code of Regulations includes detailed regulations governing the designation of an area of freeway as "landscaped." 4 Ca CCR § 2500 et seq. The regulations give the "Chief Landscape Architect," or whoever is so delegated, the authority to classify a freeway as landscaped, id. § 2504, and include details such as the timing and deadlines for designation and the requirements for such designation. See, e.g., §§ 2505, 2506, 2507. A freeway is classified as "landscaped" only when the landscaping is complete and a licensed Landscape Architect from the Department of Transportation upon personal inspection certifies in writing that the freeway is landscaped. Id. at § 2506(a), 2508(a). A person may petition the Department of Transportation to declassify a landscaped freeway, and the Department must make a determination within 90 days of receiving the petition. Id. at § 2512.

Plaintiff first makes what he characterizes as a "facial" challenge to the landscape classification of the freeway at issue on the ground that it is arbitrary and capricious to classify the freeway as such in light of the regulations defining Redwood City as "urban." See Cal. Bus. & Prof. Code § 5408. He also argues that the classification violates substantive due process "as applied" based on the particular characteristics of the freeway adjacent to his billboard. Plaintiff's challenge fails for several reasons.

7

First, plaintiff has failed to show that he has standing to make this claim as the Court discussed at the beginning of its Memorandum and Order. Even if he were to succeed, the Redwood City ordinance would still preclude him from placing any off-premises commercial display on his billboard; thus, his success would not grant him any relief. Although plaintiff has been given numerous opportunities to do so, he has not articulated any challenge to the Redwood City ordinance other than those the Court has inferred, discussed, and rejected earlier in this Memorandum and Order. As the Redwood City ordinance remains unchallenged, the Court must assume that plaintiff at this time lacks standing to challenge the designation of the freeway adjacent to his billboard as landscaped. See Harp Advertising Ill., 9 F.3d at 1292.

Second, even assuming he has standing, the Act's definition of "urban" does not mean that it violates substantive due process (or what plaintiff refers to as the "suppression doctrine) to also characterize such an area as landscaped. Plaintiff cites no case that suggests that the myriad cases holding that a governmental entity may prohibit off-premises commercial signs in the name of traffic safety or aesthetics somehow do not apply to urban areas. Plaintiff's reliance on City of Laude v. Gilleo, 512 U.S. 43, 49-54 (1994) is unavailing. Laude involved an ordinance prohibiting *nearly all signs*, including non-commercial signs, in residential areas. Id. at 55 (stating that the ordinance is unconstitutional because it forecloses a certain medium of expression "to political, religious, or personal messages").

Third, assuming plaintiff is correct that the area adjacent to his billboard is no longer landscaped and does not meet the requirements for being classified as such, Department of Transportation regulations provide him with a mechanism to request the declassification of the freeway. 4 Ca CCR § 2512. There is no evidence that plaintiff has ever made any such request and plaintiff has not proffered any reason why he should not first be required to avail himself of this mechanism before this Court reaches out and decides an issue of state law; namely, whether the freeway satisfies the State's definition of "landscaped."

//

### D. Equal protection

Plaintiff also contends the State has violated his equal protection rights because it permits other off-premises commercial billboard displays along the area of "landscaped" freeways adjacent to his freeway.

When COAA was enacted, the legislature decided that billboard displays that were lawful at the time COAA was passed would not violate COAA even if the billboards' current use violated the newly enacted law. Cal. Bus. & Prof. Code § 5216.1. The legislature determined that such "lawfully erected" displays could not be removed, or its "customary maintenance or use be limited," without paying just compensation to the owner. Id. § 5412. The State contends that the off-premises commercial displays identified by plaintiff all fall within this exception to the Act; these billboards all displayed off-premises commercial advertisements at the time the freeway was designated as "landscaped." According to defendant, the State has never budgeted any monies to condemn these billboards; thus, it permits these off-premises commercial displays while prohibiting any new off-site commercial displays along the same area of freeway.

Plaintiff does not dispute the State's assertion. Nor does he contend that his billboard qualifies for similar treatment; he does not dispute the State's evidence that the State has never issued a permit for off-premises commercial advertising on his billboard. Plaintiff purchased the billboard in 1993, after off-premises commercial advertising had already been banned along the freeway.

Plaintiff nonetheless contends that the State's grandfathering of the previously lawful off-premises commercial advertising displays violates equal protection. "The Equal Protection Clause of the Fourteenth Amendment, § 1, commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws.'" Nordlinger v. Hahn, 505 U.S. 1, 10 (1992). "The Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." Id. "[U]nless a classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes on the basis of an

9

inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest." Id.; see also New Orleans v. Dukes, 427 U.S. 297, 303 (1976) ("Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, [the Supreme Court's] decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest").

The first question, then, is what standard of review to apply to the State's decision to allow the "lawfully erected" off-premises commercial billboards to remain while at the same time prohibiting new off-premises commercial displays, such as those proposed by plaintiff. The distinction between new and old billboards is not drawn upon an inherently suspect distinction; rather, plaintiff argues that heightened scrutiny rather than rational review applies because COAA implicates a fundamental right, namely, freedom of speech. Defendant does not address the standard of review issue. The Court notes, however, that whatever the standard, it cannot be more scrutinizing than that normally accorded commercial speech regulations. As one court has noted, "[b]ecause regulation of commercial speech is subject to intermediate scrutiny in a First Amendment challenge, it follows that equal protection claims involving commercial speech also are subject to the same level of review." Capobianco v. Summers, 377 F.3d 559, 564 (6th Cir. 2004) (internal quotation marks and citation omitted).

The Court need not decide the standard of review, however, because it concludes that the record is inadequate to finally resolve plaintiff's equal protection claim. Although the State claims that it has not condemned the legal but non-conforming billboards because it does not want to pay compensation for the billboard, there is no evidence that such a decision has actually been made. The statement from a Senior Highway Outdoor Advertising Inspector that he "understand[s] that no monies have ever been budgeted" for the purpose of condemning non-conforming signs, Declaration of Sergay Ivazian at ¶ 10, is not evidence of a rational decision: it is merely evidence of inaction. Moreover, while COAA plainly requires compensation to certain billboard owners, there is no evidence in the record as to

why the legislature requires compensation. See, e.g., Metromedia, Inc. v. City of San Diego, 26 Cal.3d 848, 879 (1980) (stating that section 5412 sought to "require payment of compensation when such [compensation] was necessary to protect California's receipt of federal highway funds), rev'd on other grounds, 453 U.S. 490 (1981). Before the Court can declare that the State's decision to allow certain non-conforming billboards while prohibiting plaintiff's is rational (or is narrowly tailored to satisfy a substantial government interest) because the State does not want to pay to condemn the pre-existing displays, the Court must know the basis for the State's assertion that it must pay to condemn, other than that the State says it must.

Moreover, the evidence suggests that the State has continued to renew permits for off-premises commercial displays along landscaped freeways. When plaintiff raised this issue in his opposition brief, the State responded by asserting that there was no evidence of renewal, even though such renewal was obvious in light of the period of the permits and the date the area of freeway at issue was designated as "landscaped." The State also asserted that even if such permits had been renewed, they had been renewed by mistake. At oral argument the State took yet another position: it contended that the permits are renewed automatically. Finally, after oral argument, the State wrote a letter to the Court advising that the permits are indeed renewed automatically because to not do so would require the payment of compensation. The State's letter, of course, is not evidence; nor does it explain the basis for the legislature's decision to pay compensation to billboard owners with non-conforming billboards whose permits have expired.

While the State has not met its burden, neither has plaintiff. See C.A.R. Transp. Brokerage Co., v. Darden, 213 F.3d 474, 480 (9th Cir. 2000) (stating when that when the plaintiff moves for summary judgment he has the burden of producing evidence that would entitle him to a directed verdict). He has not shown that the legislature would not have to pay compensation; nor has he cited any law that suggests that the State's decision not to condemn in order to avoid the paying of compensation (assuming such a decision has been made) is irrational or otherwise violates the Constitution. Nor has plaintiff addressed redressability;

11

there is nothing in the record from which the Court can conclude that the Redwood City ordinance similarly violates plaintiff's equal protection rights. In any event, the Court will not make a decision on an important issue of constitutional law on an inadequate record.

Accordingly, the parties' motions for summary judgment on plaintiff's equal protection claim are continued to give the parties the opportunity to complete the record and more fully explore the issues.

### E. Temporary political sign ordinance

COAA prohibits all "advertising structures" along landscaped freeways, except for, among other things, on-premises commercial displays. Cal. Bus. & Prof. Code §§ 5440, 5442.5 This Court, however, has ruled that the State cannot favor commercial over non-commercial speech and therefore enjoined the State from prohibiting non-commercial speech where the Act prohibits commercial speech.

As a result, plaintiff's challenge to the temporary political sign section, Business and Professions Code section 5405.3, makes no sense. Plaintiff asserts that he wants to place non-commercial signs, such as "CalTrans Sucks," on his property, but not on his billboard, and suggests that he can do so only if the signs satisfy the temporary political sign requirements. Since COAA does not apply to on-premises commercial advertising, see Cal. Dep't of Transp. v. Maldonado, 86 Cal.App.4th 1225, 1233-34 (2001), and since the State must allow non-commercial signs wherever such on-premises commercial signs are allowed, there is nothing in COAA or in the record that prohibits him from doing so in light of the Court's injunction.

This omission highlights another problem with plaintiff's claim: ripeness. Plaintiff has not displayed an obviously non-commercial sign on his property since the Court issued its injunction. There is nothing in the record, or the state court injunction, that suggests the State would prohibit him from displaying such a sign. Accordingly, plaintiff's challenge to the "temporary political sign" statute is dismissed.

//

//

### F. Judicial declaration

In his motion for summary judgment plaintiff asks this Court to judicially declare whether certain proposed signs identified in paragraphs 20 through 23 of his Amended Complaint run afoul of COAA; in other words, he asks this Court, in the first instance, to decide whether certain conduct would run afoul of state law (and, by extension, the Redwood City ordinance) and therefore violate the state court injunction or this Court's order enjoining the State from applying COAA to non-commercial speech. Defendant cross-moves for summary judgment, identifying which of the proposed signs, or portions of the proposed signs, are, in its opinion, in compliance with COAA.

Plaintiff alleges that in 2004 he was contacted by a group that proposed to place on plaintiff's billboard displays saying, among other things, "Got Faith," and "The Family That Prays Together Stays Together." Amended Complaint ¶ 20. He then alleges that he wanted to publish the messages with the names and addresses of local churches in Redwood City. Id. He further alleges that he "has wanted" to publish a message about contributing funds to the local Rotary Club, id. ¶ 21, and a message, paid for out of his own pocket, supporting the San Francisco Giants. Id. ¶ 22. Yet another proposed sign would advertise his cousin's Mexican restaurant. Id. ¶ 23.

The parties' request for a declaratory judgment is denied. First, the Amended Complaint does not include a Declaratory Judgment Act claim seeking a declaration as to whether certain proposed signs would violate COAA.

Second, even if the Amended Complaint included such a claim, plaintiff has not shown that the claim is ripe for adjudication. "Ripeness is peculiarly a question of timing, designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." Thomas v. Anchorage Equal Rights Commission, 220 F.3d 1134, 1136 (9th Cir. 2000) (internal quotation marks and citations omitted). The Court's "role is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution." Id.

The ripeness inquiry on a claim for declaratory relief is whether "there is substantial controversy, between parties having legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Cas. Co. v. Pacific Coal Oil, Co., 312 U.S. 270. 273 (1941). The Court must find that "there exist a constitutional 'case or controversy,' that the issues presented are 'definite and concrete, not hypothetical or abstract." Thomas, 220 F.3d at 1139 (internal quotation marks and citation omitted).

Plaintiff has not shown that there is a definite and concrete dispute because there is no evidence that suggests he intends to actually display the signs set forth in paragraphs 20 through 23 of his Amended Complaint. He alleges, for example, that "Family Theater Productions" approached him in October 2004 about displaying signs publishing messages such as "Got Faith." Amended Complaint ¶ 20. There is no evidence that such group is still interested in publishing such messages today. Plaintiff similarly claims that he would like to place a display advertising the Rotary Club, paid for by Rotary Club members one month and paid by himself one month. Id. ¶ 21. There is no evidence that plaintiff has ever been in contact with the Rotary Club about such a sign; indeed, the complaint reads as though plaintiff and his counsel sat down and thought up various proposed signs to address as many different issues as possible.

At oral argument plaintiff's counsel represented that his client had once displayed a "Giants" sign on his billboard. There is no evidence in the record of this display and what it said; more importantly, counsel did not represent that the State had threatened to remove the sign or otherwise indicate at the time that it believed the sign violated COAA.

The Ninth Circuit's holding in Maldonado I is not to the contrary. Maldonado was decided before plaintiff filed his Amended Complaint and, more importantly, the claim the court reviewed involved a sign which plaintiff *was actually displaying on his billboard*. Maldonado v. Harris, 370 F.3d 945, 953 (9th Cir. 2004) (discussing ripeness in the context of plaintiff's challenge to the application of COAA to his current advertisements).

Finally, the parties' motions must be denied for a third reason: neither party provides the Court with any meaningful analysis. For example, plaintiff contends that the proposed

sign advertising a Mexican Restaurant is non-commercial, but he offers the Court no analysis, or case citation, to support that remarkable and unadorned assertion. The State similarly baldly asserts that a sign identifying the name and address of a church is an off-premises commercial display, again without any analysis. This lack of analysis is especially troubling given that earlier in this litigation the State wrongly contended that a paid political advertisement qualifies as off-premises commercial advertising.

For all the above reasons, the parties' request that the Court label certain hypothetical signs as commercial or non-commercial, like an umpire calling balls and strikes, is denied.

## CONCLUSION

Plaintiff's attempt to invalidate the State's ban on off-premises commercial advertising along landscaped freeways fails. Most of plaintiff's arguments fail based on binding precedent; namely, the opinions of the Ninth Circuit and the United States Supreme Court. Accordingly, defendant's motion for summary judgment on plaintiff's claims, other than his equal protection claim, is GRANTED, and plaintiff's cross-motion for summary judgment on those claims is DENIED.

The parties' cross-motions for summary judgment on plaintiff's equal protection claim is continued to allow the parties to augment the record and more completely brief the issues. Each party may submit a further memorandum with supporting evidence, not to exceed 10 pages, on or before September 8, 2006. Any replies shall be filed on or before September 22, 2006. The Court will take the matter under submission at that time. The Court has given the parties nearly two months with the expectation that they will use the time to fully explore the facts and law surrounding this issue.

**IT IS SO ORDERED.**

Dated: July 13, 2006

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California