**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NANO MALDONADO,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>WILL KEMPTON,<br><br>　　　　　Defendant. | No. C 02-03167 CRB<br><br>**MEMORANDUM AND ORDER** |

Plaintiff alleges that California's Outdoor Advertising Act ("COAA") is unconstitutional on its face and as applied to a billboard he owns adjacent to Highway 101 in Redwood City, California. The Court has previously adjudicated nearly all the claims in this lawsuit. The only claim remaining is plaintiff's contention that the State has violated his equal protection rights by prohibiting off-premises commercial displays on his billboard while allowing other off-premises commercial displays along the same area of highway.

Now pending before the Court are the parties' further memoranda and evidence in support of their cross motions for summary judgment on the equal protection claim. As the parties are familiar with the background facts of their long-standing dispute as set forth in the Court's several memoranda and orders, they will not be repeated here. After carefully considering the parties' papers and evidence, the Court GRANTS defendant's motion and DENIES plaintiff's cross motion.

# UNDISPUTED FACTS

## A. The State's Billboard Laws

California adopted its statutes prohibiting the placement of outdoor advertising displays adjacent to landscaped freeways in 1953. Declaration of Ronald W. Beals ("Beals Decl.") ¶ 3. The statutes originally provided that legally placed billboards existing at the time of the adoption of the statutes would be removed without compensation within three years after the freeway section was classified as landscaped. Id.

In 1965 Congress enacted the Highway Beautification Act, 23 U.S.C. section 131, which established national regulation for billboards along highways that receive federal aid. 23 U.S.C. § 131(a) (finding that "the erection and maintenance of outdoor advertising signs, displays, and devices in areas adjacent to the Interstate System and the primary system should be controlled in order to protect the public investment in such highways, to promote the safety and recreational value of public travel, and to preserve natural beauty"). The Highway Beautification Act imposes its standards upon the states by providing that any state that fails to comply with the Act shall lose ten percent of its federal highway funds. 23 U.S.C. § 131(b). Among other things, the Act requires that "just compensation" be paid to the owner of any lawfully erected billboard if the state takes from the owner the right to erect and maintain signs, displays and devices on the billboard. 23 U.S.C. § 131(g). The federal share of such compensation is 75 percent. Id.

California amended COAA in 1967 to comply with the Highway Beautification Act, and, in particular, it amended COAA to provide for just compensation. Bus. & Prof. Code § 5288.3a (1967). Under the Highway Beautification Act, the State gained jurisdiction over all federal-aid highways in incorporated areas, such as Redwood City, which included thousands of off-premises displays that had been erected in accordance with local ordinances and had not required State permits. Beals Decl. ¶ 5. As a result, many of these displays became nonconforming, that is, they violated the State landscaped freeway provisions and other federal requirements. Id. These billboard shall be referred to as "legal,

nonconforming." The State subsequently inspected all highways to determine which billboards were legal under the new law, legal nonconforming, or illegal. Id.

Congress subsequently amended the Highway Beautification Act to specify that states must pay compensation for the removal of all billboards, regardless of whether the removal is caused by nonconformance with federal law or more strict state standards. Id. ¶ 12; 23 U.S.C. § 131(g). California's billboard law complies with the federal act. Bus. & Prof. Code § 5412 ("no advertising display which was lawfully erected anywhere within this state shall be compelled to be removed, nor shall its customary maintenance or use be limited, whether or not the removal or limitation is pursuant to or because of this chapter or any other law, ordinance, or regulation of any governmental entity, without payment of compensation"). Congress has failed to appropriate any monies to pay its share of the required "just compensation" for more than 30 years. Beals Decl. ¶ 6. As a result, since 1974 or 1975, the State has decided not to commence discretionary removals or commence litigation to remove nonconforming displays if compensation has to be paid. Id. ¶ 9.

In sum, "since 1967, new outdoor advertising displays have been prohibited along classified landscaped freeways, but existing, legally erected billboards have been allowed to remain as '"nonconforming displays.'" Id. ¶ 15. The State continues to enforce the Act against illegal displays along landscaped freeways and to require their removal, such as with plaintiff Maldonado. Beal Decl. ¶ 15-16; Declaration of Christopher Lewis ("Lewis Decl.") ¶ 8.

**B.   Plaintiff's Billboard and the Surrounding Area**

It is undisputed that plaintiff's billboard does not qualify as a "legal nonconforming" outdoor advertising display. The State never issued a permit for off-premises commercial displays on plaintiff's billboard prior to the State's adoption of regulations prohibiting such displays, and the billboard never otherwise lawfully displayed off-premises commercial advertising. It is equally undisputed that all of the off-premises commercial billboards identified by plaintiff as evidence of the State's unequal treatment are either legal, that is, not adjacent to a landscaped portion of the freeway, or legal nonconforming, that is, these

3

billboards lawfully displayed off-premises commercial advertisements prior to the State's adoption of laws making such displays illegal. Lewis Decl. ¶¶ 5-7. Finally, it is undisputed that if the State were to require these billboard owners to cease displaying off-premises commercial advertisements, the State would have to pay the owners just compensation or otherwise risk losing ten percent of the State's federal highway funds. See People ex rel. Dep't of Transp. v. Desert Outdoor Advertising, Inc., 68 Cal.App.3d 440, 448-51 (1977).

## DISCUSSION

Plaintiff argues that the State has violated the Equal Protection Clause by failing to remove legal nonconforming off-premises commercial displays along landscaped freeways while at the same time prohibiting plaintiff from placing off-premises commercial displays on his billboard.[1] In other words, plaintiff objects to the perpetual "grandfathering" of the legal nonconforming off-premises commercial billboards. The ultimate question, then, is whether the Equal Protection Clause requires the State to remove all such billboards, including legal nonconforming billboards, or, in the alternative, requires the State to allow all off-premises commercial billboards, even those erected after the enactment of the laws prohibiting such billboards.

"The Equal Protection Clause of the Fourteenth Amendment, § 1, commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws.'" Nordlinger v. Hahn, 505 U.S. 1, 10 (1992). "The Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." Id. "[U]nless a classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest." Id.; see also New Orleans v. Dukes, 427 U.S. 297, 303 (1976) ("Unless a classification trammels

---

[1] It is worth noting that when plaintiff purchased his billboard, the restrictions on off-premises commercial displays were in effect; the right to such displays was not included in the "bundle of rights" plaintiff purchased with his billboard.

4

fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, [the Supreme Court's] decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest").

It is undisputed that the classification at issue here–differentiating between signs that were legal when erected and those that were never legal–is not based upon an inherently suspect characteristic. Plaintiff argues, however, that the classification jeopardizes the fundamental right of free speech; thus, the Court must apply strict scrutiny or at least the heightened review accorded commercial speech.

None of the cases cited by plaintiff involve the "grandfathering" of pre-existing legal commercial speech from new regulations prohibiting such speech; instead, all involve First Amendment challenges to content-based restrictions on speech. The ordinance at issue in R.A.V. v. City of St. Paul, 505 U.S. 377 (1982), for example, prohibited fighting words that insult or provoke violence on the basis of gender, race or religion, but not on any other basis, such as political affiliation or sexual preference. Id. at 391. Similarly, in Greater New Orleans v. United States, 527 U.S. 173 (1999), the regulation permitted broadcast advertisement of Indian casino or state-sponsored gambling, but not of gambling at legal, but privately-owned casinos. Id. at 190-91; see also Schad v. Borough of Mt. Ephraim, 452 U.S. 61, 72 (1981) (ordinance prohibiting live entertainment but not other types of entertainment or commercial establishments).

Plaintiff's contention that the grandfathering provision is content based is unpersuasive. Whether a law is content based "turns on whether the [law] singles out certain speech for differential treatment based on the ideas expressed." G.K. Ltd. Travel v. City of Lake Oswego, 436 F.3d 1064, 1078 (9th Cir. 2006) (internal quotation marks and citation omitted). In G.K. Ltd. Travel, the Ninth Circuit held that an ordinance that exempted pre-existing pole signs from its prohibition on such signs until such time as the pole sign is altered was not content based: "A grandfather provision requiring an officer to read a sign's message for no other purpose than to determine if the text or logo has changed, making the

5

sign now subject to the City's regulations, is not content based." Id. at 1079. Here, State officials do not even have to read a sign's message to determine if the sign is subject to the State's prohibition on off-premises commercial advertising on landscaped freeways; instead, the official merely reviews State records to determine if the billboard had a permit for such displays prior to the law's enactment or was otherwise lawfully erected. As the grandfather provision is not content based, strict scrutiny is not required. See Jones Intercable of San Diego, Inc. v. Chula Vista, 80 F.3d 320, 325 (9th Cir. 1996).

The case most closely on point is Outdoor Media Dimensions, Inc. v. Oregon, 150 Or.App. 106, 945 P.2d 614 (1997). The grandfathering law at issue there granted outdoor advertising permits to those who owned billboards on or before a certain date, but not after. Id. at 624. The court held that rational review rather than strict scrutiny applied because the classification itself was content neutral. Id. at 625. The court concluded that the law's prohibition on the installation of new billboards rationally furthered the state's interest in aesthetics and safety "because the legislature reasonably could have concluded that placing a cap on billboards would control visual blight and make traffic signs more visible. Allowing an exception for billboards already in existence . . . does not compromise the validity of those interests. . . . [T]he legislature could reasonably have concluded that the property interests of billboard owners justifies the disparate treatment." Id. (internal quotation marks and citations omitted); see also Desert Outdoor Advertising, 68 Cal.App.3d at 450 (applying rational review to an equal protection claim challenging COAA's compensation scheme).

The Ninth Circuit addressed an equal protection challenge in the commercial speech context in Jones Intercable of San Diego, Inc. The plaintiff cable operator sued the city for damages for rejecting its application to provide cable service to recently-annexed areas of the City. The district court dismissed the claim as barred by a federal law which precludes damages relief for a claim against a government entity arising from regulation of cable service. 80 F.3d at 323. On appeal, the plaintiff argued that the law precluding a damages remedy violated the Equal Protection Clause because it did not apply to other entertainment businesses or franchised utilities, such as water, gas and electricity. Id. at 327. The Ninth

Circuit, after rejecting the plaintiff's argument that strict scrutiny applies, held that "[w]hether the applicable standard of equal protection review is one of rational basis or some intermediate standard, there is ample justification for Congress's precluding damages only for the cable operators that it was subjecting to local government franchising power." Id.

Here, too, "whether the applicable standard of equal protection review is one of rational basis or some intermediate standard," id., there is substantial justification for the State's decision not to remove those billboards for which it must pay compensation. First, the State's decision to pay compensation to owners of legal nonconforming billboards is substantially related to a significant government interest. If the State removes the signs but refuses to pay compensation, the State loses ten percent of its State highway funds. 23 U.S.C. § 131(b), (g). The State, of course, has a substantial interest in retaining those funds. See Desert Outdoor Advertising, 68 Cal.App.3d at 450. Second, the State's decision not to remove the legal nonconforming billboards and pay compensation is also substantially related to a significant government interest. As federal law requires the federal government to pay 75 percent of the just compensation, but the federal government continuously fails to allocate any funds for such payments, the State would have to pay all of the just compensation.

The State's policy to prohibit new off-premises commercial billboards, but allow legal nonconforming billboard displays to remain, is also justified; such a policy furthers the State's significant interest in reducing blight and increasing traffic safety by reducing the number of billboards along state highways, even if it does not eliminate them entirely. See Outdoor Media Dimensions, Inc., 150 P.2d at 625. As the Ninth Circuit has observed, if a sign ordinance "is designed to advance a valid [government] interest–reducing the number of dangerous, non-conforming signs–it should not matter that it is underinclusive." Clear Channel Outdoor, Inc. v. Los Angeles, 340 F.3d 810, 816 (9th Cir. 2003); see also id. at 815 ("An inspection program that targets only a subset of all signs is not necessarily inconsistent with the goals of safety an aesthetics for the same reasons that it is permissible to distinguish between on-site and off-site signs in the first place").

7

**CONCLUSION**

The State's decision not to remove legal, nonconforming off-premises commercial billboards along landscaped highways, but enforce COAA against illegal off-premises commercial billboards along the same highways, does not violate the Equal Protection Clause as a matter of law. As plaintiff offers no evidence that suggests that the State is selectively enforcing the law against his illegal billboard and indeed, the State's evidence establishes the contrary, plaintiff's motion for summary judgment on plaintiff's equal protection claim is DENIED and defendant's motion is GRANTED. As this is the last claim remaining in this lawsuit, the Court will issue a judgment.

**IT IS SO ORDERED.**

Dated: January 10, 2007

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE